IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| EDNA N. ZULUETA ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:08-cv-246 |
| ) | |
| ) | JUDGE HAYNES |
| UNITED STATES OF AMERICA ) | |
| ) | |
| Defendant ) | |

## MEMORANDUM

Plaintiff Edna N. Zulueta, a former employee of the United States Postal Service ("Postal Service"), filed this action against Defendant United States of America[1] for disability discrimination pursuant to the Rehabilitation Act of 1973, 29 U.S.C. § 791, et seq. (the "Rehabilitation Act"), the Americans with Disabilities Act, 18 U.S.C. § 12101, et seq (the "ADA"), the Tennessee Handicap Act, and common-law retaliation. Plaintiff alleges that the Postal Service incorrectly perceived her as disabled, "conspired with certain evaluating health care providers in an effort to create grounds to discharge Plaintiff," and terminated her as the "direct and proximate result of an erroneous perception of disability, or animus directed at

---

[1] The Plaintiff has named the United States of America as the Defendant, rather than the Postmaster General of the United States Postal Service. "[A] federal employee bringing a discrimination claim may name as a defendant only the head of the department, agency, or unit." Moore v. Potter, 605 F.Supp.2d 731, 735 (E.D.Va. 2009) (citing 42 U.S.C. § 2000e-16(c)). Plaintiff originally filed her complaint with the assistance of counsel, but is now proceeding as a pro se litigant. Accordingly, Plaintiff "enjoy[s] the benefit of a liberal construction of [her] pleadings and filings." Boswell v. Mayer, 169 F.3d 384, 387 (6th Cir. 1999). Following this approach, the Court will consider the merits of Plaintiff's case.

1

plaintiff for complaining to the EEO, or both." (Docket Entry No. 1, Complaint, at 1, 2).

Before the Court is the Defendant's motion for summary judgment. (Docket Entry No. 11). Defendant contends that Plaintiff cannot establish a prima facie case of disability discrimination under the Rehabilitation Act. Defendant also contends that Plaintiff's common-law retaliatory discharge claim is subject to dismissal. Plaintiff originally filed a motion for summary judgment (Docket Entry No. 15), but later clarified that such motion was intended as a response to Defendant's motion for summary judgment. (Docket Entry No. 32, at 7). For the reasons that follow, Defendant's motion for summary judgment should be granted.

## A. Findings of Fact

The Plaintiff was hired as a part time flexible mail processing clerk at the Postal Service in 2005. (Docket Entry No. 1, Complaint, ¶ 6). Shortly after beginning her employment, Plaintiff contacted the EEOC office with a request for counseling. (Docket Entry No. 12, Attachment 1). The EEOC office closed Plaintiff's request for counseling due to Plaintiff's failure to complete required documentation. Id.

In August 2006, the Postal Service issued Plaintiff a Letter of Warning for unsatisfactory attendance. On September 1, 2006, Plaintiff filed a complaint with EEOC alleging that the Postal Service issued the Letter of Warning in retaliation for prior protected EEOC activity. (Docket Entry No. 12, Attachment 2). The complaint also alleged that Plaintiff's co-workers were harassing and threatening her, such as threatening to kill her and blow up her house. (See, e.g., Docket Entry No. 12, Attachment 7). On October 13, 2006, the Plaintiff settled the EEOC Complaint at the informal stage. (Docket Entry No. 12, Attachment 3). The settlement agreement provided, in pertinent part, that "Management, Ryan Jenkins, will conduct a full

investigation regarding threats made toward Edna Zuleuta. The investigation will be based upon names in Mrs. Zuleuta's EEO complaint." Id.

On December 8, 2006, the Postal Service notified Plaintiff that she would be suspended for a period of 7 days for taking unscheduled sick leave on three occasions. (Docket Entry No. 12, Attachments 4, 5). Plaintiff challenges the validity of the Postal Service's attendance records. (See, e.g., Docket Entry No. 15, Attachment 6, at 5-6). Plaintiff also claims that her direct deposit was delayed on an occasion. Id. at 7-8.

Supervisor Jenkins interviewed Plaintiff's co-workers regarding Plaintiff's allegations that they threatened and harassed her. (Docket Entry No. 12, Attachment 8). The co-workers submitted written statements denying Plaintiff's factual allegations. Id. Based upon the "serious claims against co-workers about wanting to take her life and property," Jenkins recommended that Plaintiff participate in a Fitness-For-Duty investigation. (Docket Entry No. 12, Attachment 9).

On December 15, 2006, Plaintiff had a fitness-for-duty examination with Dr. W. Lassiter. (Docket Entry No. 12, Attachment 11). Dr. Lassiter determined that Plaintiff was not fit for duty, stating in relevant part:

> **Assessment**: Not fit for duty. Physically, she is able to perform her work duties, however, pt. exhibits paranoia that has a potential to deteriorate while at work. Certainly, her work environment may de-stabilize because of her condition, overall causing a further unpleasant work environment to herself and co-workers as well.
>
> **Plan**: Administrative leave until further Psychiatric evaluation. Talked with contact regarding plan. Pt. is scheduled next week.

Id.. On the same date, Plaintiff was placed in a non-duty paid leave status. (Docket Entry No.

3

12, Attachment 12).

On December 20, 2006, Plaintiff had a fitness-for-duty examination with Dr. Greg Kyser. (Docket Entry No. 12, Attachment 13). Dr. Kyser determined that Plaintiff was not fit for duty, stating in relevant part:

> Ms. Zuleuta is suffering from a psychotic disorder of chronic duration. While I did not believe that she is in danger of imminent harm to herself or others, I do not believe that she is fit for duty as an employee of the United States Postal Service. I would strongly recommend psychiatric treatment, possibly on an impatient setting to address her psychosis. Psychological testing would be helpful to clarify the differential diagnosis.

Id.

In a letter dated December 21, 2006 to Supervisor Jenkins, Dr. LaRae Kemp, Associate Medical Director of the Southeast Area, summarized the results from the two fitness-for-duty evaluations and stated that Plaintiff was not fit for duty. (Docket Entry No. 12, Attachment 14). The letter stated in relevant part:

> Ms. Zulueta is **not fit for duty as a Mail Processor**. In evaluating this employee taken into account were the factors of duration of risk, the nature and the severity of the potential harm, the likelihood that the potential harm will occur and the imminence of the potential harm.

Id. (emphasis in original). Dr. Kemp did not examine Plaintiff.

By letter dated December 21, 2006, the Postal Service notified Plaintiff of a telephone conference on December 27, 2006. (Docket Entry No. 12, Attachment 15). According to Plaintiff, the Postal Service read her the termination letter on this telephone conversation. (Docket Entry No. 15, Attachment 6, at 10-11). On December 29, 2006, the Postal Service issued Plaintiff a Notice of Separation for medical inability to perform her position. (Docket Entry No. 12, Attachment 16).

Plaintiff wrote letters to the EEOC alleging breach of the settlement agreement, harassment, and termination based upon disability discrimination. (Docket Entry No. 15, Attachment 3, at 14-16). By letter dated May 2, 2007, the Postal Service stated that it did not breach the parties' settlement agreement. Id. Plaintiff appealed, the EEOC determined that the Postal Service had breached the settlement agreement, and the EEOC reinstated the settled EEOC complaint. (Docket Entry No. 15, Attachment 2, 11-16). On August 29, 2008, Plaintiff completed the formal EEOC complaint paperwork and the Postal Service subsequently denied Plaintiff's formal EEOC Complaint.

On March 10, 2008, Plaintiff filed a complaint for disability discrimination in the instant matter naming the United States of America as the Defendant. (Docket Entry No. 1, Complaint). It is undisputed that Plaintiff exhausted her administrative remedies before filing the instant complaint. The Plaintiff also filed a separate complaint for breach of settlement agreement, case number 3:08cv998, which the Court transferred to the Court of Federal Claims.

At the request of Plaintiff's then counsel, Dr. Shahana Huda evaluated Plaintiff on March 12, 2008. (Docket Entry No. 15, Attachment 1, at 33-35). Dr. Huda submitted a completed standardized form regarding the evaluation and concluded that Plaintiff had the diagnosis of "deferred R/O paranoid personality disorder" of Axis II. Id. at 35.

On June 12, 2008, Dr. Stephen Montgomery, an independent medical examiner, completed a comprehensive psychiatric evaluation of Plaintiff. (Docket Entry No. 12, Attachment 17). In his report dated July 7, 2008, Dr. Montgomery determined that Plaintiff suffered from "Delusional Disorder, Persecutory Type" of Axis I and made the following additional findings:

Ms. Zulueta is clearly suffering from a psychiatric disorder . . . Ms. Zulueta's delusions are that she feels numerous past employers, coworkers, and neighbors were conspiring to kill her and her husband. While it is possible for such events to occur in real life, the evidence available to me indicates that her beliefs are almost certainly delusional.

\* \* \*

Once a person feels that they have exhausted all of the normal avenues of dealing with their delusional threats, i.e., complaining to their employer, family . . . they may take measures into their own hands. It is for this reasons that whenever an employee shows signs of loss of contact with reality and particularly delusions of persecution in the workplace that a psychiatric fitness for duty evaluation is the best course of action. Once the delusional condition has been confirmed by a professional, then the person must undergo treatment before returning to work to ensure the safety of the person and fellow coworkers and employers.

The above scenario of events has occurred with Ms. Zulueta. **She has developed a delusional disorder, possibly several years ago at her own description. Eventually, her employers became aware of her delusions. They then investigated her claims. When it was obvious she was delusional they referred her for a psychiatric fitness for duty evaluation. The delusions were confirmed and the recommendation was for her to receive psychiatric treatment to eliminate the delusions before returning to work. I concur with this plan of action in every respect.**

Id. (emphasis added).

### B. Conclusions of Law

In <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment 'shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' By its very terms, this standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact.
>
> <u>As to materiality, the substantive law will identify which facts are material. Only</u>

<u>disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment</u>. Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court defined a "material fact" for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (citation omitted).

A motion for summary judgment is to be considered after adequate time for discovery. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 326 (1986). Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. <u>Emmons v. McLaughlin</u>, 874 F.2d 351, 355-57 (6th Cir. 1989). But <u>see</u> <u>Routman v. Automatic Data Processing, Inc.</u>, 873 F.2d 970, 971 (6th Cir. 1989).

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties as described by the Court in <u>Celotex</u>:

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." <u>Martin v. Kelley</u>, 803 F.2d 236, 239, n. 4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. <u>Sims v. Memphis Processors, Inc.</u>, 926 F.2d 524, 526 (6th Cir. 1991) (quoting <u>Kochins v.</u>

7

Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of 'demonstrat[ing] the absence of a genuine issue of material fact,' the nonmoving party then 'must set forth specific facts showing that there is a genuine issue for trial.'" Emmons, 874 F.2d at 353 (quoting Celotex and Rule 56(e)).

Once the moving party meets its initial burden, the Court of Appeals warned that "[t]he respondent must adduce more than a scintilla of evidence to overcome the motion [and]... must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989) (citations omitted)). See also Hutt v. Gibson Fiber Glass Products, 914 F.2d 790, 792 (6th Cir. 1990) ("A court deciding a motion for summary judgment must determine 'whether the evidence presents a sufficient disagreement to require a submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'") (quoting Liberty Lobby).

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> More important for present purposes, summary judgment will not lie if the dispute about a material fact is 'genuine' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.
>
> \* \* \*
>
> Progressing to the specific issue in this case, we are convinced that the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The

8

> judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find
> by a preponderance of the evidence that the plaintiff is entitled to a
> verdict-'whether there is [evidence] upon which a jury can properly proceed to find
> a verdict for the party producing it, upon whom the onus of proof is imposed.'

Liberty Lobby, 477 U.S. at 248, 252 (citation omitted and emphasis added).

It is likewise true that:

> In ruling on a motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated.
>
> It has been stated that: 'The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . . .'

Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." Duchon v. Cajon Co., 791 F.2d. 43, 46 (6th Cir. 1986) (citation omitted).

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions:

1. Complex cases are not necessarily inappropriate for summary judgment.

2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

3. The movant must meet the initial burden of showing 'the absence of a genuine issue of material fact' as to an essential element of the non-movant's case.

4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

9

5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that the party must prevail as a matter of law.'

6. As on federal directed verdict motions, the "scintilla rule" applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'

9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the 'old era' in evaluating the respondent's evidence. The respondent must 'do more than simply show that there is some metaphysical doubt as to the material facts.' Further, '[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is 'implausible.'

Street, 886 F.2d at 1479-80.

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those

10

material facts under the governing law?

A.   **Disability Discrimination**

Plaintiff's complaint alleges disability discrimination pursuant to the Rehabilitation Act, the ADA, the Tennessee Handicap Act, and also claims that the Postal Service's actions violated Title VII and common-law retaliation. (Docket Entry No. 1, Complaint, at ¶ 11). The gravamen of Plaintiff's complaint is that the Postal Service erroneously perceived her as disabled and inappropriately terminated Plaintiff based upon the perception of disability. "[W]hen a federal employee seeks to redress rights guaranteed by the Rehabilitation Act, that Act preempts other actions to redress the same discrimination." Paegle v. Dep't of the Interior, 813 F.Supp. 61, 66-67 (D.D.C. 1993) (citing Shirey v. Devine, 670 F.2d 1188, 1191, n. 7 (D.C.Cir.1982)). See also Jones v. Potter, 488 F.3d 397, 403 (6th Cir. 2007) ("The Rehabilitation Act, not the . . . ADA, constitutes the exclusive remedy for a federal employee alleging disability-based discrimination."). .

The Rehabilitation Act prohibits discrimination against an "otherwise qualified handicapped individual, solely by reason of his handicap." Pesterfield v. Tenn.Valley Auth., 941 F.2d 437, 441 (6th Cir. 2001) (citing 29 U.S.C. ¶ 794 and Consolidated Rail Corp. v. Darrone, 465 U.S. 624, 626 (1984)). "Analysis of claims under the Rehabilitation Act and Americans with Disabilities Act run roughly parallel, and '[b]y statute, the Americans with Disabilities Act standards apply in Rehabilitation Act cases alleging employment discrimination.'" Holmes v. Jackson, No. 06-CV-10361, 2007 WL 4180733, *3 (E.D. Mich. Nov. 26, 2007) (quoting Mahon v. Crowell, 295 F.3d 585, 588-589 (6th Cir. 2002)). See also Thompson v. Williamson County, Tenn., 965 F.Supp.1026, 1036, n.4 (M.D. Tenn. 1997).

11

"To make out a prima facie claim of employment discrimination under the Rehabilitation Act, the plaintiff must show: (1) he is a "disabled" person under the Act; (2) he was otherwise qualified to perform the job's requirements with or without reasonable accommodation; and (3) he was discriminated against solely because of his disability." Holmes, 2007 WL 4180733 at *3 (citations omitted). Someone is "disabled" if he has a "physical or mental impairment which substantially limits one or more major life activities, and either a record of such an impairment or is perceived to have the impairment, whether or not the impairment exists." Id. (citing 29 U.S.C. § 705(20)(b)). Major life activities include "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." Butler v. Potter, 345 F.Supp.2d 844, 852 (E.D. Tenn. 2004) (citations omitted).

A plaintiff is "regarded as disabled" when "(1) the employer mistakenly believes that a person has a physical or mental impairment that substantially limits one or more major life activities, or (2) the employer mistakenly believes that an actual nonlimiting impairment substantially limits one or more major life activities." Id. (citing Mahon, 295 F.3d at 592). "In both situations, the covered entity must harbor a misconception about the claimant, 'either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting.'" Brady v. Potter, 476 F.Supp.2d 745, 755 (N.D. Ohio 2007) (quoting Sutton v. United Air Lines, Inc., 527 U.S. 471, 489 (1999)).

Plaintiff's complaint alleges that she was terminated because she was wrongfully regarded as disabled, but was not disabled. (Docket Entry No. 1, Complaint, ¶ 7). In the alternative, Plaintiff's complaint alleges that if she "could be said to have a disability, it was of such a kind

12

and character that it had no effect upon her ability to perform the essential functions of her job or upon any major life activity." Id. Plaintiff also argues that the Postal Service did not establish a need for the fitness-for-duty examinations. Defendant responds that it justifiably terminated Plaintiff based upon the results of the fitness-for-duty evaluations. Defendant further argues that Plaintiff was not "otherwise qualified" for her position because she posed a direct threat and terminating Plaintiff was a business necessity. Finally, Defendant argues that Plaintiff cannot prove pretext. Here, as will be addressed below, even reviewing Plaintiff's claims with the liberal construction required for pro se plaintiffs, she has failed to present evidence showing a genuine issue for trial. Farah v. Wellington, Nos. 07-3476, 07-3477, 295 Fed.Appx. 743, 748 (6th Cir. Sept. 30, 2008).

It is clear that the Postal Service believed that Plaintiff had a mental impairment that substantially limited her ability to work as a mail processor. The Postal Service derived this belief from the results of two fitness-for-duty evaluations and medical opinions offered by Dr. Lassiter, Dr. Kyser, and Dr. Kemp, who all concluded that Plaintiff was not fit for duty at the Postal Service. The Sixth Circuit has rejected the argument that the request for a fitness-for-duty evaluation itself proves perception of a disability. As the Sixth Court stated in Sullivan v. River Valley School Dist., 197 F.3d 804, 811 (6th Cir. 1999), "[a] request that an employee obtain a medical exam . . . cannot itself prove that the employer perceives the employee to have an impairment that substantially limits one or more of the employee's major life activities." Plaintiff has not presented any evidence to show that the Postal Service's belief regarding her mental condition was a mistake or based upon a misconception.

Even if the Postal Service regarded Plaintiff as disabled as defined under the

13

Rehabilitation Act, Plaintiff has not produced evidence to establish that she was otherwise qualified to work as a mail processor.[2] Defendant argues that Plaintiff was not otherwise qualified to work at the Postal Service because she was a direct threat. A "direct threat" is a "significant risk of substantial harm to the health or safety of the individual or others that cannot be eliminated or reduced by reasonable accommodation." 29 C.F.R. § 1630.2(r). The direct threat determination must be based upon medical or objective evidence evaluating the following four factors: "(1) [t]he duration of the risk; (2) [t]he nature and severity of the potential harm; (3) [t]he likelihood that the potential harm will occur; and (4) [t]he imminence of the potential harm." Id.

Here, Dr. Kemp considered the four factors outlined above in determining that Plaintiff was unfit for duty as a mail processor. Dr. Kemp based her medical opinion on the results of two fitness-for-duty examinations. The medical opinions offered by Dr. Lassiter and Dr. Kyser also support this conclusion. Dr. Lassiter concluded that Plaintiff has "paranoia that has a potential to deteriorate while at work. Certainly, her work environment may de-stabilize because of her condition. . . [.] " Dr. Kyser noted that Plaintiff had a psychotic disorder of chronic duration and recommended "psychiatric treatment, possibly on an impatient setting" for Plaintiff's psychosis. Plaintiff's subsequent medical evaluations also support the conclusion that she was not otherwise qualified for her position. Dr. Huda examined Plaintiff in March 2008 and concluded that Plaintiff had "deferred R/O paranoid personality disorder." Dr. Montgomery examined Plaintiff in June 2008 and concluded that Plaintiff was "clearly suffering from a psychiatric disorder"

---

[2] The Court notes that Plaintiff did not request an accomodation and does not argue that the Postal Service should have offered her an accomodation.

14

requiring treatment.

Plaintiff makes the bald assertion that the medical professional's evaluations were wrong. However, under the Rehabilitation Act . . . the question is thus not whether [the employer's] decision that plaintiff was not employable due to his psychiatric condition was correct measured by 'objective' standards. What is relevant is that [the employer], in fact, acted on its **good faith belief about plaintiff's condition based upon [the medical professional's] opinion** . . . [.]" Pesterfield, 941 F.2d at 443 (emphasis added and citations omitted). Put another way, "[e]ven if the . . . medical opinions were demonstrably flawed, the Postal Service's reasonable reliance upon them is not discriminatory." See also Crocker v. Runyon, 207 F.3d 314, 319 (6th Cir. 2000) (citation omitted).

Plaintiff has offered no proof that the Postal Service did not rely on the medical evaluations in good faith in determining that Plaintiff was not "otherwise qualified" to be an employee of the Postal Service. Moreover, Plaintiff has not offered any medical evidence to contradict those opinions. Plaintiff, as the non-moving party, may not merely rest on conclusory allegations contained in the complaint, but must respond with affirmative evidence supporting her claim and establishing the existence of a genuine issue of material fact. There is no genuine issue of material fact and Plaintiff has not put forth sufficient evidence for a reasonable jury to find her to have met the prime facia requirements of a disability discrimination claim under the Rehabilitation Act. As a result, Defendant is entitled to summary judgment as a matter of law on Plaintiff's disability discrimination claim.

**B.    Discharge in Retaliation for Prior EEOC Activity**

Plaintiff's complaint alleges that "Plaintiff's suspension and ultimate discharge were the

direct and proximate result of an erroneous perception of disability, **or animus directed at Plaintiff for complaining to the EEO,** or both." Id. at ¶ 10 (emphasis added). Beyond mentioning "common-law retaliation" as a jurisdictional basis for relief in the Complaint, Plaintiff asserts no arguments or evidence relating to termination in retaliation for prior EEOC activity. Thus, it is unclear whether Plaintiff is attempting to assert a separate claim of retaliatory discharge for her prior EEOC complaints. Defendant responds that Plaintiff's claim for common-law retaliatory discharge is excluded by Title VII and further subject to dismissal for failure to exhaust administrative remedies under 28 U.S.C. § 2675(a).

To establish prima facie retaliation, Plaintiff must show that: "(1) [s]he engaged in a protected activity; (2) this exercise of protected rights was known to defendant; (3) defendant thereafter took adverse employment action and (4) there was a causal connection between the protected activity and the adverse employment action." Simoudis v. Ford Motor Co., 29 Fed. Appx. 314, 318 (6th Cir. 2002) (citing Hafford v. Seidner, 187 F.3d 506, 515 (6th Cir. 1999)). If a prima facie case is established, then the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse action. Jackson v. Pepsi Cola, 783 F.2d 50, 54 (6th Cir. 1986) (citation omitted). The plaintiff may rebut defendant's legitimate action by demonstrating the articulated reason was a mere pretext for retaliatory discrimination. Id.

It is undisputed that the Plaintiff filed EEOC complaints while an employee of the Postal Service and that the Postal Service was aware of Plaintiff's EEOC activity. However, Plaintiff has not produced proof sufficient to establish a causal connection between the filing of EEOC complaints and her subsequent suspension and termination. "[P]ro se plaintiffs are not automatically entitled to take every case to trial ... [and] the lenient treatment generally accorded

16

to pro se litigants has limits." Farah v. Wellington, Nos. 07-3476, 07-3477, 295 Fed.Appx. 743, 748 (6th Cir. Sept. 30, 2008) (quoting Pilgrim v. Littlefield, 92 F.3d 413, 416 (6th Cir.1996)(citations omitted)). Even reviewing Plaintiff's claim with the liberal construction required for pro se plaintiffs, she has failed to present evidence showing a genuine issue for trial on a retaliatory discharge claim.

Moreover, assuming, arguendo, that Plaintiff could allege a prima facie claim for retaliatory discharge, her claim would still fail under the burden shifting framework. The Defendant has offered proof that it terminated Plaintiff because she was not fit for duty as a mail processor as documented by two fitness-for-duty examinations. Plaintiff has not offered evidence to suggest that the Postal Service's explanation was merely a pretext for her termination. As such, Plaintiff's retaliatory discharge claim must fail. Thus, to the extent Plaintiff's Complaint attempts to assert a separate claim for retaliatory discharge for EEOC activity, the claim fails and the Defendant's motion for summary judgment should be granted.

## C. Conclusion

For the reasons stated herein, the Defendant's motion for summary judgment should be granted in its entirety (Docket Entry No. 11) and Plaintiff's motion for summary judgment should be denied. (Docket Entry No. 15).

An appropriate Order is filed herewith.

Entered on this the ___10th___ day of June, 2009.

WILLIAM J. HAYNES, JR.,
United States District Judge